TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture Section
     United States Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2569/1785
     Facsimile: (213) 894-0142
     E-mail: Victor.Rodgers@usdoj.gov
             Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

                         WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>CRYPTOCURRENCY,<br><br>          Defendant. | Case No. 2:22-cv-00556<br><br>COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) & (C)<br><br>[HSI/USPIS] |

     Plaintiff United States of America brings this claim against

defendant Cryptocurrency, and alleges as follows:

                    JURISDICTION AND VENUE

     1.   The government brings this in rem forfeiture action

pursuant to 18 U.S.C. § 981(a)(1)(A) & (C).

     2.   This Court has jurisdiction over the matter under 28 U.S.C.

§§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

PERSONS AND ENTITIES

4.    The plaintiff in this action is the United States of America.

5.    The defendant Cryptocurrency consists of the following items seized on or about September 14, 2021 during the execution of a federal search warrant at Stanley Hudson's Inglewood, California residence:

(a)    1 EA 125631.9995 XRP from address rNTPodU...awykfS in "erase" seed 1 EA 243.881066 BNB from address bnb1egwvw6aa...qe952g4 in "erase" seed;

(b)    1 EA 308527996.37391521 SAFEMOON token from address 0x976C184AA3...4C0C4f1 in "erase" seed;

(c)    1 EA 98309410275.81 FEGbsc token from address 0x976C184AA3...C0C4f1 in "erase" seed;

(d)    1 EA 25.26659 XTZ from address tz1WZ5hTrwc....HJKdws8 in "erase" seed;

(e)    1 EA 56692266841.49 NFTART token from address 0x976C184AA3...C0C4f1 in "erase" seed;

(f)    1 EA 11662177429.82 FOX token from address 0x976C184AA3...C0C4f1 in "erase" seed;

(g)    1 EA 0.08391314 BNB Smart Chain token from address 0x976C184AA...C0C4f1 in "erase" seed // BSC blockchain;

(h)    1 EA 858664450.36730151 ELG token from address 0x976C184AA3...C0C4f1 in "erase" seed;

(i)    1 EA 1508776833.45023636 BONFIRE token from address 0x976C184AA3...C0C4f1 in "erase" seed;

(j)   1 EA 8457.24333853 CAKE token from address 0x9b8B2B9B4d...e5c6c4 from "math" seed for metamask wallet;

(k)   1 EA 2602238.85910237 SRK token from address 0x9b8B2B9B4d...e5c6c4 from "math" seed for metamask wallet;

(l)   1 EA 0.54691865 ETH from address 0x9b8B2B9B4d...e5c6c4 from "math" seed for metamask wallet;

(m)   1 EA 0.0326723 BNB Smart Chain token from address 0x9b8B2B9B4d...e5c6c4 //"math" seed, metamask;

(n)   1 EA 25859.81081045 ABYSS token from address 0xCd6222f...50CaFf from "filter" seed in safety deposit box;

(o)   1 EA 524815.5047135 METM token from address 0xCd6222f...50CaFf from "filter" seed in safety deposit box; and

(p)   1 EA 0.00322815 ETH from address 0xCd6222f...50CaFf from "filter" seed in safety deposit box.

6.   The defendant cryptocurrency is currently in the custody of the United States Customs and Border Protection, Department of Homeland Security in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7.   The interests of Stanley Hudson may be adversely affected by these proceedings.

BASIS FOR FORFEITURE

Background Regarding U.S. Private Faults

8.   U.S. Private Vaults ("USPV") is a company that was in the business of renting safe deposit boxes to customers.  By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

9.   The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric Identification; No ID Required."  USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name.  For your privacy and the security of your assets in our vault, **the less we know the better**."  This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

10.   USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV.  The posting asserted:

> Banks require clients to provide their social security
> number and a photo identification as a condition for
> renting a safe deposit box.  Your information is then filed
> in the bank's central data system.  This information can be
> easily accessed by government agencies (such as the IRS) or
> attorneys armed with court orders. If no one is aware you
> have a safe deposit box, the contents (your gold) are much
> safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their illegal activities would more likely be uncovered.

11.   In the same post, "Four Reasons to Store Your Gold At USPV", USPV stated:

4

As government chartered institutions, banks are now
required to file "suspicious activity reports." . . . U.S.
Private Vaults is not subject to federal banking laws and
would only cooperate with the government under court order.
By marketing services in this fashion, some persons who ultimately
became USPV customers, were attracted by the advertisements because
USPV's safe deposit box storage facilities offered them a much safer
place to store their illegal criminal proceeds, unlike law-abiding
banks, so as to eliminate their fear of apprehension by law
enforcement and in promotion of their illegal activities.

12.   Further, and in order to shield customers from having law
enforcement uncover their illegal activity, USPV encouraged its
customers pay their box rental fees in cash.  In addition, USPV
charged customers significantly higher prices than those charged by
major banks, because USPV offered something which legitimate banks do
not: anonymity, a place to store illegally obtained cash, tips and
assistance in avoiding law enforcement and a willingness to look the
other way with regard to all types of criminal conduct.  And one of
USPV's owners has gone so far as to brag about bringing to USPV
individuals selling marijuana and other drugs illegally, based on the
owner's connections, by marketing USPV as a safe place for those
criminal actors and potential USPV customers to store their ill-
gotten gains.

13.   Not surprisingly, because USPV's business model is designed
to appeal and cater to criminals, USPV has repeatedly been used by
criminals to store criminal proceeds.  Over the years, the contents
of specific boxes at USPV have been forfeited because they are the
proceeds of criminal activity.  For example, on July 1, 2019,

officers seized $215,653 from Michael Beaver, as he was leaving USPV, and then seized an additional $1,448,700 from his USPV boxes. Records from the Employment Development Department (the "EDD"), which is the California agency to whom employers must report wages earned by their employees, showed Beaver had no legitimate employment income.  In addition, Beaver's phones revealed evidence of drug trafficking activity, and the in excess of $1.6 million funds were forfeited as proceeds of unlawful activity.

14.  On April 21, 2019, a victim was kidnapped in San Diego and brutally tortured in a warehouse, where the victim was hit with sticks and baseball bats; stripped naked; hit with a hammer on the victim's toes; and set on fire.  Allan Newman was arrested and charged with kidnapping for ransom, attempted murder, torture and aggravated mayhem relative to the beating.  The victim had been employed by a group of people who were engaged in distributing counterfeit marijuana vaping cartridges, and the group believed the victim had stolen a suitcase full of cash, which a vape cartridge customer had left at the warehouse.  A portion of the funds had been placed by the victim's ex-wife in a safe deposit box at USPV, which the ex-wife retrieved and used to pay the victim's ransom.

15.  On March 6, 2018, officers seized $101,080 and 26 gold bars from Vincent Ramos' USPV box.  Ramos was the CEO of a company that facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine.  The currency and gold bars were forfeited, and Ramos was indicted and pleaded guilty to Racketeering and Drug Trafficking, in the Southern District of California.  See United States v. Ramos, Case No. 18cr1404-WQH.

16.  In September 2016, officers seized $592,450 and $435,190, respectively, from two USPV boxes of Mikhail Malykhin, an individual who was the leader of an identity theft/computer intrusion fraud ring.  He and others were involved in a complex scheme involving altering hacked debit cards from a health insurance provider and altering the codes to cash out the debit cards.  Malykhin was indicted and pleaded guilty to committing access device fraud, and the over $1,000,000 in funds seized from Malykhin's boxes were forfeited as proceeds of the fraud and were used to pay restitution to victims of Malykhin's fraud.  See United States v. Malykhin, Central District of California Case No. 16cr0688-DMG.

17.  In November 2015, officers seized $1,543,400 from the USPV box of Gerald Lebowitz, which he stated had been brought into the United States illegally to avoid taxes.  However, further investigation revealed that Lebowitz was part of a conspiracy to distribute methaqualone, a controlled substance, and officers seized over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors, during the course of the investigation.  The funds were forfeited as criminal proceeds.  See United States of America v. Lebowitz, Central District of California Case No. 17cr-0053-CAS.

18.  On October 28, 2015, officers seized $500,000, 22 gold bars and 15 gold coins from the USPV box of Cyrus Irani, who was the master bookmaker and head of an illegal gambling organization that operated both internet and traditional bookmaking operations, and engaged in money laundering.  He pleaded guilty to Enterprise Corruption, and 14 others in his organization were convicted of various gambling, money laundering and enterprise corruption charges.

1   The assets found in Irani's box were forfeited as criminal proceeds.

2   The Property At Issue In This Case

3       19.   The assets located in Stanley Hudson's box at USPV are an

4   example of persons storing assets from their illegal activity at

5   USPV, as a result of USPV's advertisements, marketing efforts and

6   other transactions and activities over the web, on-line and in the

7   mails, designed to induce persons to rent boxes at USPV to hide their

8   property.  The assets seized from Stanley Hudson's box and thereafter

9   by the government represent the proceeds of criminal activity and

10  were involved in money laundering activity, which therefore renders

11  them subject to forfeiture.

12      20.   Law enforcement officers found $256,276.00 in U.S. Currency

13  and Approximately 26 Miscellaneous Coins inside Stanley Hudson's box

14  at USPV.  A civil forfeiture action has been filed against those

15  assets.  See United States v. $256,275.00 in U.S. Currency, et al.,

16  Case No. 2:21-cv-07310-CAS(KSx)

17      21.   Stanley Hudson was convicted on charges of federal bank

18  fraud, aggravated identity theft and aiding and abetting.  See United

19  States of America v. Thomas Cochee and Stanley Hudson, Case No. 08-

20  cr-715(A)-PSG.  As part of the conviction, Stanley Hudson was

21  sentenced to 94 months (i.e., almost 8 years) imprisonment, five

22  years of supervised release, and ordered to pay $872,125.52 to the

23  victims he defrauded.  But Stanley Hudson has failed to voluntarily

24  pay anywhere near the sums that are due.  Instead, Stanley Hudson has

25  voluntarily paid only about $18,000.00 due on the restitution

26  judgment.

27      22.   In order to compel Stanley Hudson to pay his restitution

28  obligation, the government in 2021 submitted a demand for real

property sale proceeds from real estate Stanley Hudson was selling without intending to use those proceeds to pay restitution. As a result, the escrow company provided approximately $228,000.00 to the government, which applied those funds to Stanley Hudson's restitution debt and thereby compelled Stanley Hudson to use those funds to satisfy at least a portion of the losses suffered by the victims he has defrauded.

23. Still, after applying those funds to the restitution order over $625,000.00 remained due and owing in restitution to Stanley Hudson's victims. Instead of satisfying his victim loss obligations, Stanley Hudson instead chose to hide in his box at USPV (i.e., box number 1401) his assets, which include the $256,276.00 in U.S. Currency and the coins and the defendant cryptocurrency.

24. Stanley Hudson also appears to be hiding his wealth from taxing authorities. Except for one year during the five years between 2014 and 2018, Stanley Hudson reported negative adjusted gross income in the State of California as follows: 2014 (negative $41,708); 2015 (negative $40,238); 2016 (negative $21,661); 2017 ($4,326); and 2018 (negative $12,290).

25. When officers executed a federal search warrant at Stanley Hudson's residence on or about August 5, 2021, and spoke with Stanley Hudson about his restitution debt, Stanley Hudson stated it was no big deal that he had not paid his restitution debt. In addition, when officers asked Stanley Hudson about other valuable assets (including the defendant cryptocurrency worth approximately $400,000.00 that was once situated inside Stanley Hudson's USPV box), Stanley Hudson provided conflicting stories and false information concerning his sources of those additional assets. Stanley Hudson

lacks sufficient legitimate sources of income to support his acquisition and possession of the defendant, and was using his box at USPV to facilitate his illegal activities in shielding his assets from victims entitled to receive assets in payment of their losses as reflected in Stanley Hudson's restitution judgment.

26.  When officers discovered there had been approximately $400,000.00 worth of cryptocurrency inside Stanley Hudson's USPV box that had been stored on Stanley Hudson's wallets, officers tried to access and seize the cryptocurrency but learned that almost all of it had been moved to other wallets.  During the August 5, 2021 search at Stanley Hudson's residence, officers told Stanley Hudson that the warrant authorized officers to seize the cryptocurrency.  On or about August 17, 2021, Stanley Hudson moved his cryptocurrency to one or more new addresses, which information officers discovered on or about September 9, 2021.

27.  Thereafter, on September 13, 2021, officers obtained a new search warrant for Stanley Hudson's residence.  The search warrant authorized the seizure of cryptocurrency and related records and items, such as recovery seeds or root keys which can be used to regenerate a wallet.  Officers executed the warrant on September 14, 2021, and found and seized the defendant cryptocurrency which officers transferred to a cryptocurrency address controlled by the government.

FIRST CLAIM FOR RELIEF

28.  Plaintiff incorporates the allegations of paragraphs 1-27 above as though fully set forth herein.

29.  Based on the above, plaintiff alleges that the defendant cryptocurrency constitutes or is derived from proceeds traceable to

1  violations of 18 U.S.C. §§ 1341 (wire fraud) and/or 1343 (mail

2  fraud), each of which is a specified unlawful activity as defined in

3  18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendant

4  cryptocurrency is therefore subject to forfeiture pursuant to 18

5  U.S.C. § 981(a)(1)(C).

6                          SECOND CLAIM FOR RELIEF

7       30.  Plaintiff incorporates the allegations of paragraphs 1-27

8  above as though fully set forth herein.

9       31.  Based on the above, plaintiff alleges that the defendant

10  cryptocurrency constitutes property involved in multiple transactions

11  or attempted transactions in violation of 18 U.S.C.

12  § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such

13  property, with the specified unlawful activity being a violation of

14  18 U.S.C. §§ 1341 (wire fraud) and/or 1343 (mail fraud).  The

15  defendant cryptocurrency is therefore subject to forfeiture pursuant

16  to 18 U.S.C. § 981(a)(1)(A).

17                          THIRD CLAIM FOR RELIEF

18       32.  Plaintiff incorporates the allegations of paragraphs 1-27

19  above as though fully set forth herein.

20       33.  Based on the above, plaintiff alleges that the defendant

21  cryptocurrency constitutes property involved in multiple transactions

22  or attempted transactions in violation of 18 U.S.C. § 1957(a), or

23  property traceable to such property, with the specified unlawful

24  activity being a violation of 18 U.S.C. §§ 1341 (wire fraud) and/or

25  1343 (mail fraud).  The defendant cryptocurrency is therefore subject

26  to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

27       WHEREFORE, plaintiff United States of America prays:

28

1    (a)   that due process issue to enforce the forfeiture of the

2  defendant cryptocurrency;

3    (b)   that due notice be given to all interested parties to

4  appear and show cause why forfeiture should not be decreed;

5    (c)   that this Court decree forfeiture of the defendant

6  cryptocurrency to the United States of America for disposition

7  according to law; and

8    (d)   for such other and further relief as this Court may deem

9  just and proper, together with the costs and disbursements of this

10 action.

11 Dated: January 26, 2022          TRACY L. WILKISON
                                    United States Attorney
12                                  SCOTT M. GARRINGER
                                    Assistant United states Attorney
13                                  Chief, Criminal Division
                                    JONATHAN GALATZAN
14                                  Chief, Asset Forfeiture Section

15

16                                       /s/
                                    _____
                                    VICTOR A. RODGERS
17                                  MAXWELL COLL
                                    Assistant United States Attorneys
18                                  Asset Forfeiture Section

19                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

20

21

22

23

24

25

26

27

28

<u>VERIFICATION</u>

I, Lyndon Versoza, hereby declare that:

1.   I am a United States Postal Inspector employed by the United States Postal Inspection Service ("USPIS"), Los Angeles Division, in Los Angeles, California with the Federal Bureau of Investigation.

2.   I have read the above Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 26, 2022 at Los Angeles, California.

_____
Lyndon Versoza